## IOWA CITY STATE BANK v. FRIAR.
### (No. 331.)

(Court of Civil Appeals of Texas. El Paso. April 23, 1914. On Rehearing, June 4, 1914.)

1. TRIAL (§ 139*)—PEREMPTORY INSTRUCTIONS —WHEN AUTHORIZED.

A peremptory instruction for defendant may not be given on his uncorroborated testimony, proving facts material to his defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. BILLS AND NOTES (§ 344*)— BONA FIDE PURCHASER—NOTICE OF DEFENSES.

A purchaser of a series of notes, who has notice that the same have a common consideration arising out of the same transaction, is chargeable with notice of all defenses existing between the original parties, and takes the notes subject thereto if any of them are past due.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 866–868; Dec. Dig. § 344.*]

3. BILLS AND NOTES (§ 344*) — BONA FIDE PURCHASER—NOTICE OF DEFENSE.

Notes, identical in every respect, except as to their serial numbers and maturity dates, but containing no recital that they arose out of the same transaction or were based on a common consideration, disclosed on their face facts to charge a purchaser with notice that they had a common consideration arising out of a single transaction, and where at the time of the purchase one of them was due, he was not a bona fide holder.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 866–868; Dec. Dig. § 344.*]

4. BILLS AND NOTES (§ 357*) — INNOCENT HOLDER—COLLATERAL SECURITY.

An innocent holder of a note as collateral, to which there is a valid defense against the payee, is protected only to the amount of the debt for which it is held as collateral.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 909–912, 961; Dec. Dig. § 357.*]

5. BILLS AND NOTES (§ 497*) — INNOCENT HOLDER—COLLATERAL SECURITY.

An innocent holder of a note as collateral, to which there is a valid defense against the payee, has the burden of showing that his debt is unpaid, and the amount due thereon, and the recovery must be restricted to the amount so shown.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

Harper, C. J., dissents.

#### On Rehearing.

6. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Where no issue was made on the trial as to a fact assumed in an instruction as true, based on the uncorroborated testimony of a party, the error in the instruction, because assuming the fact, was not material, and, under Courts of Civil Appeals rule 62a (149 S. W. x), must be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

Appeal from El Paso County Court; A. S. Eylar, Judge.

Action by the Iowa City State Bank against

W. S. Friar. From a judgment for defendant, plaintiff appeals. Affirmed.

C. W. Croom and A. R. Grambling, both of El Paso, for appellant. Goldstein & Miller, of El Paso, for appellee.

HIGGINS, J. Appellant, a banking institution of Iowa City, Iowa, brought suit on three notes, which read:

First:

McD. 5–17–12  \            3758 3826
     Iowa City, Iowa, Sep. 27, 1911.

Six months after date, for value received, I or we promise to pay to the order of the Royal Company of Iowa City, Iowa, at El Paso, Texas, thirty-four and 06/100 dollars $34.06, without interest.
No. 28781 B   P. A. K.
         Name: W. S. Friar.
B. R. ......   Address: El Paso, Texas.
                . 2100 Myrtle Ave.

Second:

McD. 5–27–12            3758 B 3826
     Iowa City, Iowa, Sep. 27, 1911.

Eight months after date, for value received, I or we promise to pay to the order of the Royal Company, of Iowa City, Iowa, at El Paso, Texas, thirty-four and 06/100 dollars $34.06, without interest.
No. 28781 C   P. A. K.
         Name: W. S. Friar.
         Address: El Paso, Texas.
               2100 Myrtle Ave.

Third:

McD. 7–25–12            3758 C 3826.
     Iowa City, Iowa, Sep. 27, 1911.

Ten months after date, for value received, I or we promise to pay to the order of the Royal Company, of Iowa City, Iowa, at El Paso, Texas, thirty-four and 06/100 dollars, $34.06, without interest.
No. 28781 D   P. A. K.
         Name: W. S. Friar.
         Address: El Paso, Texas.
               2100 Myrtle Ave.

It held the notes as collateral to secure payment of a $2,000 note of Franklin Price Company, dated May 29, 1912. This $2,000 note was given in renewal of a prior note of same company in sum of $2,000, dated November 29, 1911, due in six months after date. M. F. Price and P. E. Lyon are partners residing and doing business in Iowa City, Iowa, under two firm names, viz., the Royal Company, in which capacity they are named as payees in the notes sued upon, and Franklin Price Company, in which capacity is executed the note to appellant bank, and to secure payment of which the collateral notes are held. The $2,000 note of November 29, 1911, evidenced a loan of that amount, and to secure its payment, the notes of Friar and various other parties, aggregating $2,282.57, were deposited as collateral. Upon maturity some of the collateral notes had been paid, but how much thereof the record does not disclose. Evidently, therefore, the renewal note of $2,000 covered in part at least money loaned upon date of its execution, as well as money originally loaned upon the date of the original note. The three notes sued upon were of a series given to cover the purchase price of merchandise sold

by the Royal Company to Friar, and, as between the original parties, his testimony shows that the consideration for the notes had failed. A peremptory instruction was given, in response to which verdict was returned and judgment rendered in defendant's favor.

[1] The plea of failure of consideration is based upon an agreement upon part of the Royal Company to exchange any merchandise purchased by appellee remaining on hand after same had been displayed for sale in his store for 90 days. Appellee testified that he had displayed the goods in his store for that length of time, and he had then on hand goods valued at $106.46, invoice price, which he offered to exchange, and which the Royal Company refused to do. Aside from Friar's own testimony, we find no evidence in the record to support his contention that he had displayed the goods as the contract required, and that the value of those unsold at invoice price amounted to the sum stated. Friar was an interested witness, and the jury might have disbelieved his testimony in the particulars indicated. The peremptory instruction was improperly given, since it necessarily assumed as a fact matter material to his defense, and proven only by his own uncorroborated testimony. Gonzales v. Adoue, 56 S. W. 548; Turner v. Grobe, 24 Tex. Civ. App. 558, 59 S. W. 585; Ins. Co. v. Villeneuv, 29 Tex. Civ. App. 128, 68 S. W. 203; Ry. Co. v. Lucas, 148 S. W. 1149; Thomas v. Saunders, 150 S. W. 769.

The error indicated requires a reversal, and in view of retrial a brief statement will be made of what is conceived to be the correct legal principles applicable to the facts presented.

[2] The purchaser of a series of notes, who has notice that the same have a common consideration arising out of the same transaction, is charged with notice of all defenses existing between the original parties, and takes the same subject thereto, if any of the notes are past due at the time of purchase. Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055; Ferguson v. Wiede, 46 S. W. 392; Lybrand v. Fuller, 30 Tex. Civ. App. 116, 69 S. W. 1005; Bank v. Ricketts, 152 S. W. 649; Kampmann v. McCormick, 99 S. W. 1147; Norwood v. Leeves, 115 S. W. 53.

[3] In the cases referred to the notes contained recitations showing that they arose out of the same transaction, and had a common consideration which is not contained in the series here sued upon, but to any reasonable mind, an inspection of these notes would at once have suggested that they were part and parcel of the same transaction. They are identical in every respect except as to their serial numbers and maturity dates, and the sequences of these add further evidence of their nature in this respect. While they have no recitation to disclose that they arose out of the same transaction and are based upon a common consideration, yet they oth-

erwise bear unmistakable evidence thereof, and it would indeed be a very stupid purchaser who would not so assume from an inspection of the notes alone. We hold that the notes alone contained evidence sufficient to place the bank upon notice of their character in this respect. This being true, and one of the notes being past due upon the date of the renewal note and loan, the status of the bank as an innocent purchaser must depend upon the original loan and note made November 29, 1911. The testimony of appellant's cashier discloses that some of the collateral to secure the original note had been paid when the renewal note was taken, but there is nothing to indicate with any degree of certainty whatever how much remained due thereon.

[4] The innocent holder of a negotiable note as collateral security, to which there is a valid defense against the original payee, is protected, but only to the extent of his interest—the amount of the debt for which it is held as collateral. Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055; Van Winkle Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862; Wharton v. Bank, 153 S. W. 699.

[5] And the burden of proof rests upon such innocent holder of collateral negotiable paper, the consideration of which is shown to have failed, to show that his debt is unpaid and the amount due thereon, and his recovery should be restricted to the amount so shown. Wright v. Hardie and Harrington v. Claflin, supra.

As to the original loan and note upon which its status, as a bona fide holder rests, the bank has failed to discharge this burden.

In Harrington v. Claflin, supra, Claflin & Co., were the innocent holders of certain notes of Harrington, which were secured by lien attempted to be fixed upon homestead property. The notes were held as collateral to secure payment of a debt of Lessing, Solomon & Rosenthal. In bar of the foreclosure proceedings the homestead character of the property was pleaded. In discussing the rights of the parties Justice Brown said:

"If the court had submitted the issue and the jury had come to the conclusions above stated, it would have been their duty to find a verdict for the defendants, because there is no evidence to show that the debt to which the notes stand as collateral security has not been paid, and if it has not been paid, there is nothing to show how much remains unpaid upon it, nor does it appear from the evidence that it is necessary for Claflin & Co. to collect these notes in order to satisfy their debt against Lessing, Solomon & Rosenthal. It appearing that the maker of the notes had a good defense against the payees, it devolved upon the assignees of the notes, who hold them as collateral security, to make proof of the facts stated, that is, that the debt secured by these notes has not been paid, how much is due upon it, *and what other security they hold out of which it might be paid without injury to them and by which the homestead of the makers of the notes would be protected.* In this connection we will state that the undis-

puted evidence shows that Claflin & Co. received the entire stock of goods which belonged to the firm of Lessing, Solomon & Rosenthal, also an amount of cotton which belonged to their debtors, from H. Kempner, for which they felt justified in advancing the sum of $62,000, and in addition thereto they received the notes sued on as collateral. What other property they held to secure their debt does not appear. *They should have made the proof which would show them equitably entitled to enforce these notes and the lien upon this land in order to protect themselves.*"

Applying the rule there enunciated, it would seem to be necessary for appellant to further show the status of the additional collateral which it holds, and make the proof which would show it equitably entitled to enforce these notes in order to protect itself.

Reversed and remanded.

Chief Justice HARPER dissents.

On Rehearing.

[6] This cause originally was reversed because the court's charge assumed as a fact matter proven only by the uncorroborated testimony of Friar. The authorities firmly establish the rule that an instruction is erroneous which assumes as a fact matter which has been proven only by the uncorroborated testimony of an interested witness, but upon further consideration the conclusion has been reached that it should not be regarded as a rule of such absolute and universal application as in all instances of its violation to require reversal. City of San Antonio v. Rollins, 127 S. W. 1166, 1173; Ry. Co. v. Stone, 125 S. W. 587.

From a consideration of the entire record, it is apparent that no issue was made upon the trial respecting the matters testified to by Friar and assumed as true in the court's charge, and in such case it would seem that the error of the court is not material, and should not be treated as ground for reversal; especially so in view of the provisions of rule 62a (149 S. W. x), recently adopted.

Accordingly, the motion for rehearing is granted, and the judgment of the lower court affirmed.