## CITY NAT. BANK OF GALVESTON v. PEARCE. (No. 7075.)

(Court of Civil Appeals of Texas. Austin. Jan. 26, 1927. Rehearing Denied Feb. 16, 1927.)

**1. Principal and agent ⚙═⇒23(5)—Evidence held to sustain finding that payee bank, collecting note, was agent of holder in due course, and that maker was released.**

In action by holder in due course against maker of note, evidence *held* to sustain finding of jury that payee bank, which collected the note, was agent for collection of the holder in due course, and that the maker was not liable to the holder in due course.

**2. Bills and notes ⚙═⇒497(3)—Holder in due course of paid collateral notes must prove debt secured, insufficiency of other collateral, and loss of debt unless permitted to recover.**

Where maker has paid notes, one holding them in due course as collateral, in order to recover against the maker, must prove the amount unpaid of the debt secured, and that other collateral is insufficient to pay the debt, and that the debt will be lost, unless recovery is permitted.

Appeal from Lampasas County Court; J. Tom Higgins, Judge.

Action by the City National Bank of Galveston, Tex., against Earl Pearce. From a judgment for defendant, plaintiff appeals. Affirmed.

H. F. Lewis, of Lampasas, and McDonald & Wayman, of Galveston, for appellant.

Roy L. Walker and J. C. Abney, both of Lampasas, for appellee.

BLAIR, J. Appellant sued appellee on his note for $377, alleging that it was a due course holder under indorsement of the Lometa State Bank, payee in the note. Appellee answered that he paid the note, or that he renewed it and later paid the renewal note, to the Lometa Bank, appellant's authorized or ostensible agent to collect the note, which agency appellant was estopped to deny. Appellant denied the authority of the Lometa Bank to act for it. The jury found that the Lometa Bank acted as appellant's agent in the collection of the note, and judgment was rendered for appellee. The finding and judgment are attacked as being against the undisputed evidence.

[1] The testimony is without material conflict and sustains the jury's finding, if it does not establish the agency as a matter of law. Appellant bank loaned the Lometa Bank $10,000 on its 90-day note, collaterally secured by notes of its customers aggregating $14,000, among which was the note of appellee in suit. Appellee's note matured before the note of appellant which it secured, and shortly after its maturity appellee paid the interest and

executed his renewal note for the principal to the Lometa Bank, who delivered him a note marked "paid," which he thought was his original note, but discovered on the following day that it was only a copy; whereupon he returned it to the bank for an explanation, and was informed that the original was pledged as collateral with some city bank, but that it would be obtained and delivered to him within a few days. Appellee paid the renewal note to a Dallas bank, the due course holder, at its maturity. On the agency issue, appellant bank's vice president testified:

"Our custom in handling the Lometa State Bank account was that when the note we held against it would become due we would either collect same, or they would renew it, and on the renewal they would send us other collateral in place of the collateral we held that was due or paid. We never notified the parties owing the collateral notes when they were due. I suppose the state bank at Lometa looked after its collateral. We did not consider we owned the notes while we held same as collateral; we just held them as collateral to secure its note to us. We made no special record of these collateral notes; just placed them in our collateral files and took no action on them. * * * "I knew that the bank examiners would require Mr. McCarson to secure renewals on past-due paper. We never gave the collateral notes held by us any attention as to renewals, as we just held them as collateral to their note. * * *

"We never notified the Lometa State Bank at the maturity of the note sued on that such note was due. We have loaned the Lometa State Bank money, and taken its customers' notes as collateral security, for several years past, and have never notified the Lometa State Bank, or the makers of such collateral notes of the maturity of such notes, or demanded of such bank, or the makers of such notes, payment of same at maturity, except in the present case, when demand was made a short time after maturity upon the defendant, Earl Pearce, who stated to me, that he had settled with the Lometa State Bank."

All the witnesses agree to the following custom testified to by the banking commissioner in charge of the Lometa Bank:

"It is the custom between country banks and banks from which they borrow for the country banks to receive money from customers of such banks on their notes, and to collect same where said notes have been pledged with larger banks, to whom the country banks had pledged their customers' notes for loans."

The vice president of the Lometa State Bank testified as follows, with reference to the renewal and collection of the note in suit:

"The same was collected by me as vice president of the Lometa State Bank, and was credited to the loan and discount account on the books of the Lometa State Bank in the regular way, as all such previously collected, which had been pledged to the City National Bank of

Galveston on prior loans, for the entire period of our account with the City National Bank of Galveston, and all other notes that matured pledged with this last and particular loan mentioned, that were collected by me, as vice president of the Lometa State Bank."

The cashier of the Lometa Bank testified:

"We made all renewals and collections on the notes held by the City National Bank of Galveston as collateral security on our note to them. Said bank never objected to our handling collateral notes in that way.

"It was not the custom of the Lometa State Bank to remit the proceeds of such notes as were collected by us, or to credit the same to the City National Bank account. * * * It was the custom of the Lometa State Bank to collect such notes, and place the money in the bank, and proper credit would be given when the Lometa State Bank's note to other banks became due, and then the proper adjustment would be made, and proper credits given."

We submit that the evidence abundantly supports the jury's finding that the Lometa Bank acted as appellant's agent in the collection of the note in suit; in fact, it conclusively establishes such agency and the judgment must be affirmed.

[2] The judgment must also be affirmed because appellant, who held the note as collateral security only, failed to prove the amount of its debt still due on Lometa Bank's note; failed to prove that the collateral notes already collected and the other collateral notes turned over to it by the commissioner of banking were insufficient to pay its debt; and failed to prove that it would lose its debt unless permitted to collect the note in suit.

The rule with reference to this question is stated in the case of Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862, in the following language:

"Whether the doctrine upon which the courts allow the innocent holder of commercial paper to recover against the negligent but innocent acceptor [or] maker is based upon broad principles of public policy intended to foster commerce, or upon the principles of an equitable estoppel, or both, it is clear that it extends no further than is necessary to the complete protection of the innocent holder, and cannot be extended so as to allow such holder to pervert the equitable principles upon which it is based for the purpose of aiding one party to a commercial instrument in obtaining an undue advantage over another."

Or, as said in Continental & Commercial Nat. Bank v. Meister (Tex. Civ. App.) 186 S. W. 377:

" 'The equity of the innocent holder of the paper will prevail over the valid defense of the maker only so far as absolutely necessary to prevent the holder from sustaining loss, and, he being in possession of all the facts, it is incumbent upon him to make proof thereof. If he shows only that he is a bona fide holder of the paper as collateral security, then he has failed to establish any right to recover against the maker who has a complete defense to the paper as between the original parties thereto.' "

Or, as said in Farwell v. Tingle (Tex. Civ. App.) 280 S. W. 232:

"The judgment of the court must be upheld upon the ground that the plaintiffs failed to show the amount due them from Byrd on the original note to which the note sued upon was collateral. * * * The evidence of the defendants is sufficient to show that as between them and Byrd the note had been fully paid. When the defendants established this fact, the burden rested on the plaintiffs in error to show that they were bona fide holders before maturity; but to entitle them to recover anything they must show the amount of the indebtedness still due them from Byrd on the principal obligation, and all other securities, if any, besides the collateral note, they had for the principal debt." Live Stock State Bank v. Locke (Tex. Civ. App.) 277 S. W. 405; Harrington v. Claflin, 91 Tex. 294, 42 S. W. 1055; Poythress v. Ivey (Tex. Com. App.) 228 S. W. 157; Bruyere v. Liberty Nat. Bank (Tex. Civ. App.) 262 S. W. 844; Cherry v. First Tex. Chemical Mfg. Co., 103 Tex. 82, 123 S. W. 689; Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Van Winkle Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862; Wharton v. Bank (Tex. Civ. App.) 153 S. W. 699; Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1050; Handley v. Bank (Tex. Civ. App.) 149 S. W. 742.

Appellant made no such proof, and the judgment must be affirmed.

Affirmed.